**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH AURTHUR PULEO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  25-2151** |
| | : | |
| **PLYMOUTH ROCK ASSURANCE** | : | |
| **CORPORATION** | : | |

## MEMORANDUM

**MURPHY, J.**                                                        **July 20, 2026**

This case is about whether an insurance policy covers alleged damage to a home

following the collapse of a neighboring home.  Joseph Puleo entered into an insurance contract

for his Norristown home with Palisades Property and Casualty Insurance Company in 2022.

Some months later, Mr. Puleo was forced out of his residence by the Municipality of Norristown

because his property became unsafe after the collapse of a wall on a neighboring property.

Things allegedly got worse; Mr. Puleo said that vandals broke in and stole the copper wire from

his residence, and that the neighboring property's demolition caused further problems.  But

following discovery, Mr. Puleo has not substantiated his claims: the record contains no actual

evidence of damage to his residence, and the provisions of the agreement that Mr. Puleo relies

upon do not actually help him.  So, we grant Palisades' motion for summary judgment and close

this case.

### I.    Factual background

In September of 2022, plaintiff Joseph Puleo entered into a homeowners insurance

contract with defendant Palisades Property and Casualty Insurance Company for his residence at

25 East Fornance Street in Norristown, Pennsylvania.[1]  DI 25 at ¶¶ 2-3.  But then, in March of 2023, Mr. Puleo received a notice from the Municipality of Norristown directing him to vacate his residence amid safety concerns raised by the collapse of a neighboring property.  *Id.* at ¶ 8; DI 25-5.

Mr. Puleo did not inform Palisades that he had vacated his home until several months later, on July 11, 2023.  DI 25 at ¶ 9.  On September 20, 2023, Insurance Restoration Consultants Inc. (IRC) conducted an inspection of Mr. Puleo's residence at the request of Palisades.  *Id.* at ¶ 10.  IRC thereafter produced a report, including photos, detailing its inspection.  DI 25-6.  The "[i]ssue" the report addressed was: "Has the Insured's property been damaged by the collapse?" *Id.* at 2.  On the building's exterior, IRC noted that there was "a large amount of brick from the neighboring collapse in the alley" and that "[t]he meter has been pulled from the Insured's property and the power has been turned off," but "did not observe any damage to the exterior of the Insured's house because of the neighboring collapse."  *Id.*  Similarly, on the first, second, and third floors of the residence, IRC "did not observe any type of direct physical damage" caused by the collapse.  *Id.* at 2-3.

But in the basement, IRC documented that "[p]arge coating has fallen off the right wall" which "[t]he Insured's representatives stated . . . occurred as a result of the power being turned off" because of the condemnation of the neighboring property.  *Id.* at 2.  IRC also noted that, as a result of food spoilage, "the refrigerator is ruined and there is no cost-effective way to clean it[.]" *Id.* at 3.  Ultimately, however, the IRC report concluded that "[t]he neighboring collapse has not caused any direct physical damage to the Insured's property."  *Id.*  Palisades denied coverage of

---

[1] Where undisputed, we cite to the parties' consolidated statement of facts.  DI 25.  That includes where Mr. Puleo denies the veracity of a statement in form, but not in substance.

the initial claim related to the collapse.  DI 25-12.

Later, in October 2023, Mr. Puleo made a new claim with Palisades: he said vandals entered his vacant home, stripped his property of copper, and caused other, unspecified, damage. DI 25 at ¶ 12; DI 25-11.  Palisades denied the vandalism claim.  DI 25-13.  By November of 2024, the neighboring property that suffered the collapse was demolished.  DI 25 at ¶¶ 8, 16. Mr. Puleo says the demolition of the neighboring property also caused damage to his residence, but Palisades was not informed of the alleged damage until months later  — on March 26, 2025 — when Mr. Puleo brought this lawsuit and alleged as much in his complaint.  *Id*. at ¶ 14; DI 1.

Under Mr. Puleo's insurance policy, Palisades agreed to cover Mr. Puleo's: (A) "Dwelling"; (B) "Other Structures" which are "set apart from the dwelling by clear space" (i.e., a fence); (C) "Personal Property"; (D) "Loss of Use"; and (E) additional, enumerated coverages. DI 25-2 at 6-13.  Each of the covered areas is limited to certain "Perils Insured Against."  *Id.* at 14.  For the "Dwelling" and "Other Structures," the agreement covers "direct physical loss."  *Id.* at 14.  And for losses to "Personal Property," the agreement covers "any" of 16 enumerated perils.  *Id.* at 15.  To recover for "Loss of Use," the insured must similarly be able to show an insured peril has occurred.  *Id.* at 8-9.

The policy also lists certain exclusions to coverage.  For example, "vandalism and malicious mischief" is not covered where "the dwelling has been 'vacant' or 'unoccupied' for more than 30 consecutive days immediately before the loss."  *Id.* at 14.  Under the language of the policy, "'[v]acant means the dwelling is 'unoccupied' or lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy of the dwelling as a

3

residence." *Id.* at 6.  And losses caused by any "Ordinance or Law . . . "Requiring or regulating the construction, demolition, remodeling, renovation, or repair of property[.]" *Id.* at 18.

## II.    **Palisade's motion for summary judgment**

Mr. Puleo's complaint consists of one count for breach of contract stemming from Palisades' denial of coverage for alleged losses caused by the collapse of the neighboring home, its demolition and vandalization to his property.  DI 1-1 at 9-12.  Palisades moves for summary judgment, arguing that Mr. Puleo has not identified any evidence of "direct physical loss" from any of the three alleged sources of damage.  DI 26-1 at 6-17.  In addition, Palisades says that any vandalization of Mr. Puleo's residence is excluded by the policy because it was unoccupied for more than 60 consecutive days immediately before the loss, and Mr. Puleo failed to timely notify Palisades of the alleged damage to his property caused by the demolition, prejudicing Palisades. *Id.* at 11-13.  Mr. Puleo responds, in short, that Palisade's own evidence — namely the IRC report — creates a genuine issue of material fact for a jury to resolve.  DI 27-1 at 5.

## III.    **Standard or review**

Summary judgment may be granted where "the moving party shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Savane v. Secretary United States Department of Homeland Security*, 164 F.4th 93, 98 (3d Cir. 2026) (quoting Fed. R. Civ. P. 56(a)).  To assess the presence or absence of a genuine dispute, we "view the facts in the light most favorable to the nonmoving parting and draw all inferences in that party's favor." *Id.* (citation modified).  Nonetheless, a plaintiff "must point to concrete evidence in the record" to support his claims. *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995))

4

(citation modified).  "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party[.]"  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation modified).

### IV.    <u>Analysis</u>

A claim for breach of contract has three elements: (1) the existence of a contract; (2) a breach of a duty imposed by that contract; and (3) damages.  *Kalili v. State Farm Fire and Casualty Company*, 330 A.3d 396, 403 (Pa. Super. 2024).  As in many such cases, the parties do not dispute the existence of the contract.  DI 25 at ¶ 2.  Rather, their dispute centers on whether Palisades has breached the agreement by declining coverage to Mr. Puleo.  To make that determination, we "are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder."  *Kurach v. Truck Ins. Exchange*, 661 Pa. 176, 192 (Pa. 2020).  So, where necessary, "we apply traditional principles of contract interpretation in ascertaining the meaning of the terms used therein."  *Id.*  Taking each of Mr. Puleo's alleged losses in turn, we examine the evidentiary record before us and conclude that summary judgment is appropriate because Mr. Puleo's claims lack evidentiary support, and because the language of the insurance agreement precludes his recovery.[2]

### A.  The collapse

Palisades argues that Puleo "has provided no evidence, expert or otherwise, of any damage to the Residence Premises as a result of the March 2023 collapse of the neighboring home."  DI 26-1 at 10.  We agree.  The opinion expressed in the IRC report was that, "based on

---

[2] Mr. Puleo posits that what the cause of Mr. Puleo's loss is — the collapse, the fridge, or the demolition — is "immaterial."  DI 27-1 at 4.  While that may be true, we analyze the record on each of those events separately for the sake of clarity.

years of restoration experience," the collapse did "not cause any direct physical damage to the Insured's property." DI 25-6 at 2-3. That the meter was "pulled from the Insured's property" and that Mr. Puleo's family members say that the parge coating was damaged as a result of the power being turned off after the collapse does not create a genuine issue of material fact. *Id.* at 2. In short, Mr. Puleo would ask a jury to speculate about the cause of those alleged losses. Juries may not speculate. "An inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 167 (3d Cir. 2017) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014)) (citation modified).

### B. The vandalism

Turning to the alleged vandalism, Mr. Puleo argues that the insurance policy's vandalism exclusion should not apply. DI 27-1 at 6-8. The parties debate the applicability of a decision from this district, *Hollingsworth v. State Farm Fire & Cas. Co.,* 2005 WL 563414 (E.D. Pa. Mar. 9, 2002), which interpreted a similar provision. DI 26-1 at 12; DI 27-1 at 6-8. But because Mr. Puleo offers no evidence of the vandalism he alleges, we need not resolve that dispute. Mr. Puleo's briefing says, without citation, that the damage from the vandalism "included, but was not limited to, the theft of copper pipes." DI 27-1 at 1-2. All that tells us is that vandals allegedly stole copper pipes from Mr. Puleo's home. What other purported vandalism occurred is wholly unspecified, and there is no record evidence (not even testimony from Mr. Puleo) that the theft of the copper pipes ever occurred. In essence, Mr. Puleo relies on mere allegations to combat summary judgment. That is not enough.[3] *Williams v. Borough of West Chester, Pa.*, 891

---

[3] Mr. Puleo's allegations of vandalism are not supported by any citation to the record.

F.2d 458, 460 (3d Cir. 1989) ("a nonmoving party must adduce more than a mere scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings.") (citation modified); *DeForte v. Borough of Worthington*, 844 F. App'x 511, 514 (3d Cir. 2021) (same); *Chemical Equipment Labs, Inc. v. Travelers Property Casualty Co. of Am.*, 595 F.Supp. 3d 365, 371 (E.D. Pa. 2022) (same).

## C.  The demolition

Like the collapse and the vandalism, Mr. Puleo's evidence of damage sustained by the neighboring building's demolition is scant.  Mr. Puleo relies principally on "itemized estimates from contractors detailing the items that need to be fixed due to the partial collapse[,] subsequent forced vacancy, vandalism, and/or demolition of the neighboring property."  Neither creates a triable issue of fact.  DI 27-1 at 5.  The invoices simply detail the cost to provide a variety of services to Mr. Puleo's property.  They say nothing about the reason for rendering the services or the causes of any of the damage allegedly sustained by the demolition.  DI 27-8; DI 27-8.  These estimates might help enumerate Mr. Puleo's damages, but they do nothing to let a jury do more than speculate about causation.

## D.  The refrigerator

Unlike the other alleged damages, the alleged damage to Mr. Puleo's refrigerator has a little more evidentiary support.  The IRC report includes in its conclusion that "[a]t this point the refrigerator is ruined and there is no cost-effective way to clean it after being exposed to months of spoiled food items."  DI 25-6 at 3.  The record also includes a notice from the Municipality of

---

Our review did not reveal anything that he should have cited, but at any rate, "judges are not like pigs, hunting for truffles buries in the record."  *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 at n.8 (3d Cir. 2006) (citation modified).

Norristown deeming Mr. Puleo's home unsafe to occupy, such that he had to evacuate his house. DI 25-5.  However, even assuming that this creates a genuine dispute regarding the cause of the damage to Mr. Puleo's refrigerator, he has not shown that such damages are covered by his insurance policy with Palisades.

As the plaintiff, Mr. Puleo bears the burden of proving that his claims fall within the policy's coverage.  *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) ("In Pennsylvania, the insured bears the burden of proving facts that bring its claim within the policy's affirmative grant of coverage.") (citation modified); *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (same).  Mr. Puleo has not met that burden here.  In his opposition brief to Palisade's motion for summary judgment, Mr. Puleo does not address the 16 enumerated perils covered under the personal property provision, whether those examples are exhaustive, or whether the refrigerator falls under any of those enumerated perils. DI 25-2 at 15-17; DI 27-1.  Rather, he states general principles of contractual interpretation which he believes favor his position, but then neglects to explain how those principles apply to the contract at issue.  DI 27-1 at 3-10.  That is not enough.  We simply have nothing to go on.[4]

### E. Loss of Use

Our review of the parties' scant summary judgment briefing led to more questions than answers.  Accordingly, we ordered the parties to provide supplemental letters laying out which policy provisions matter here.  DI 27, 28, 29.  Specifically, we explained that "Mr. Puleo's

---

[4] Moreover, the insurance agreement expressly excludes "Neglect" by the insured, which is defined as "the failure of any 'insured' to use all reasonable means to protect and preserve property at and after the time of a loss."  DI 25 at 19.  Mr. Puleo said nothing about whether he used reasonable means to protect the refrigerator by disposing of the food items in it before vacating the home.

opposition to summary judgment focuses exclusively on rebuffing the provisions identified by Palisades, without any clear indication of what provisions purportedly control the dispute" and "further clarity on plaintiff's position is needed." DI 27. Mr. Puleo effectively forfeited, responding with the same generic reference to the terms of the insurance contract that prompted our request for elaboration. DI 28. In any event, Mr. Puleo's supplemental letter identified the agreement's provision on "Loss of Use," so we address it now. *Id.*

> Coverage D of the agreement, pertaining to Loss of Use, provides:
>
> If a loss caused by a Peril Insured Against causes the "residence premises" to become uninhabitable, we will cover any necessary increase in living expenses you incur to maintain your normal household standard of living . . . . If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we will cover, pursuant to the above provisions, any Additional Living Expense loss that you incur.

DI 25 at 8-9.

Two factors prevent the application of Coverage D here. First, coverage for Loss of Use is limited to damage caused by a "Peril Insured Against," which the agreement defines as "direct physical loss" included in coverages A and B. *Id.* So, for Mr. Puleo's loss of use of his residence to be covered by the agreement, he must show some such loss to his property or the neighboring property. And as we explained above, there is no evidence of any physical damage to Mr. Puleo's property in this record. As for the collapse of the neighboring property, the insurance agreement specifies that Palisades does not insure for losses "[i]nvolving collapse, including . . . (1) An abrupt falling down or caving in; (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion[.]" *Id.* at 14. So, the collapse of the neighboring property, by the agreement's terms, is not a Peril Insured Against.

9

Second, the agreement explicitly excludes losses caused "directly or indirectly" by "any ordinance or law . . . [r]equiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris." *Id.* at 17-18.  The notice provided by the Municipality references "2012 IMPC 108.1.1," a local ordinance pertaining to "unsafe structures."[5]  In this way, it could be said that Mr. Puleo suffered a loss of use of his residence resulting from the enforcement of an ordinance.  Under the agreement, the "ordinance or law" exclusion applies "regardless of any other cause or event contributing concurrently or in any sequence to the loss," and applies "whether or not the loss event results in widespread damage or affects a substantial area."  DI 25 at 17-18.  Mr. Puleo's loss of use of his residence is excluded by his agreement with Palisades.

## V.      Conclusion

Mr. Puleo offers no evidence of damage to his residence, and the language of the insurance agreement with Palisades precludes his claims for damage to his refrigerator and loss of use of his property.  Accordingly, Palisade's motion for summary judgment is granted.

---

[5] In fact, the notice copies the language from 2012 IPMC 108.1.1 defining an unsafe structure.  DI 25-5.

10